## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA

**LAMAR WEBSTER,**

    *Petitioner,*

v.

**UNITED STATES OF AMERICA,**

    *Respondent,*

)
)
)
)
)
)
)
)

**RECEIVED**

**MAR 1.5 2012**

CLERK, U.S. DISTRICT COURT
DISTRICT OF MONTANA
BILLINGS, MONTANA

Orig. No. 1:07-cr-00128-RFC-1

Civil No. _____

**JUDGE RICHARD F. CEBULL**

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO VACATE, SET ASIDE OR CORRECT JUDGMENT
## PURSUANT TO 28 U.S.C. § 2255

**NOW COMES** the Petitioner, Lamar Webster, and would hereby offer this Memorandum of Law in Support of the Motion to Vacate, Set Aside or Correct Judgment ('Motion to Vacate') pursuant to 28 U.S.C. § 2255 filed contemporaneously with this Memorandum of law.

## I. INTRODUCTION

Mr. Webster timely files this Motion to Vacate contending that the judgment in this matter should be vacated or set aside due to the denial of Mr. Webster's

1

Sixth Amendment right to effective assistance of counsel at both the trial and appellate level. Mr. Webster submits that trial counsel failed to properly object to inadmissible evidence and that evidence provided the link the government needed to convict Mr. Webster of the conspiracy. There were two pieces of evidence used to link Mr. Webster to the conspiracy in this matter: 1) a Western Union "To Send Money" form that was used to show that Kelly Mayes ('Mayes') sent Mr. Webster $300 that Richard Todd ('Todd') instructed her to send and that Todd testified were drug proceeds; 2) a cellular phone entry found in Todd's phone after he was arrested to "L." with Mr. Webster's telephone number linked to it.

Mr. Webster submits that both of those pieces of evidence are inadmissible hearsay. The "To Send Money" forms are completely inadmissible under any of the exceptions to the hearsay rule and the telephone entry is inadmissible for the same reasons. There were no other pieces of evidence that linked Mr. Webster in with Todd and Mayes story, other than these two pieces of evidence. Mr. Webster submits that trial counsel was ineffective for failing to object to their admission and that he was prejudiced as a result of it.

As it relates to appellate counsel, Mr. Webster submits that counsel was ineffective for failing to inform the Court of Appeals that that drugs that were ruled inadmissible were actually showed to the jury. The Court of Appeals believed that they were not shown to the jury. The district court permitted a lay witness to testify

2

concerning the different qualities of crystal meth, using bags of crystal meth that the government concedes cannot be linked to Mr. Webster. Counsel offered a contemporaneous objection with it and then moved to strike the testimony. The district court refused to do so. The Court of Appeals based the holding that it was not an abuse of discretion to permit the testimony concerning the drugs, because the drugs were never shown to the jury. However, the drugs were, in fact, shown to the jury.

Had appellate counsel informed the Court of Appeals of this fact, Mr. Webster submits that outcome of the appeal would have been different. The panel did not understand that the government was "flashing" bags of crystal meth in front of the jury that had not a single thing to do with Mr. Webster and had a lay witness testify that "this is the quality that I was getting from Mr. Webster." They did not understand that, because counsel failed to properly education them or even himself concerning what actually occurred.

Mr. Webster now timely files a Motion to Vacate challenging these issues and ask that this Honorable Court vacate the judgment against him and remand for a new trial, absent the complained of evidence.

## II. FACTS OF CASE

Beginning in December 2004, investigators in Billings, Montana began working with an informant who made several controlled buys from Richard Todd. Eventually, these buys escalated into undercover officer Mike Gilluly of the Billings Police Department purchasing three ounces of crystal methamphetamine directly from Todd. Todd was later arrested and charged with drugs crimes, in relation to these sales. Further investigation led to four more arrested. The five defendants pleaded guilty and agreed to cooperate with law enforcement officers.

The Petitioner in this case, Lamar Webster, was eventually arrested based upon the allegations made by Todd that he was his supplier of methamphetamine. Mr. Webster was charged with four counts: 1) conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846; 2) substantive possession with intent to distribute over 500 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; 3) money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) and 18 U.S.C. § 2; and 4) substantive money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(I). Mr. Webster pled not guilty and proceeded to trial.

In December 2008, following a four day jury trial, Mr. Webster was convicted on all counts. The only two pieces of evidence that linked Mr. Webster to the offense were a "To Send Money" for from Western Union and a telephone entry into the cellular phone of Richard Todd. Counsel offered no objection to the

4

hearsay nature of either of these pieces of evidence. Absent that evidence, the only thing against Mr. Webster was the testimony of individuals from the criminal milieu that never mentioned Mr. Webster's name, until they needed to "cut a deal."

Following his conviction Mr. Webster filed a direct appeal to the Ninth Circuit Court of Appeals. <u>United States v. Webster</u>, 623 F.3d 901 (9th Cir. 2010). On appeal, Mr. Webster challenged, *inter alia*, testimony concerning the a proposed methamphetamine exhibit, the admission of the $300 Western Union record [1]the jury instructions given by the district court and the sufficiency of the evidence.

### iii. LAW & ARGUMENT

A. COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HE FAILED TO OBJECT TO THE ADMISSION OF THE WESTERN UNION "TO SEND MONEY" FORMS AND CELLULAR PHONE ENTRIES, WHICH WERE BOTH CLASSIC HEARSAY WITHOUT ANY EXCEPTIONS TO THE GENERAL RULE THAT HEARSAY IS INADMISSIBLE

The familiar standard to determine whether counsel was functioning as the counsel guaranteed by the Sixth Amendment is found in *Strickland v. Washington*, 466 U.S. 668 (1986). There, the Supreme Court set-forth the two prong test that must be proven by a preponderance of the evidence. A petitioner asserting

---

[1] While this was raised on direct appeal, Mr. Webster currently challenges trial counsel's failure to object to the evidence, which raised the standard of review against Mr. Webster considerably.

ineffective assistance of counsel must prove that 1) counsel's performance was deficient; and 2) that the deficient performance prejudiced the defense. Id. 688. Counsel's assistance is viewed through the lens of whether the assistance was reasonable considering all of the circumstances. *Fairbank v. Ayers*, 632 F.3d 612, 617 (9th Cir. 2010).

A strong presumption of reasonable professional assistance is indulged in by the reviewing court and the petitioner must overcome the presumption that the challenged action might be considered sound trial strategy. *Strickland* at 689; see also *Fairbank* at 618. This burden remains with the petitioner. See *United States v. Cronic*, 466 U.S. 648, 658 (1984).

### *Hearsay Statement*

The Federal Rules of Evidence define "hearsay" as an out-of-court statement offered to prove the truth of the matter asserted. See *Fed. R. Evid.*, Rule 801(c). The classic test to determine whether a statement is hearsay is to ask the question whether or not the only relevant purpose for the offering of the out-of-court statement is its truth? See *Fed. R. Evid.*, 801, *Commentary* by Prof. Anthony Bocchino. While this is the general rule, there are approximately twenty-eight exceptions to the hearsay rule that admit evidence that would otherwise be considered hearsay, when there is an indicia of the reliability and trustworthiness

6

of the evidence being offered. <u>See</u> *Bockting v. Bayer*, 505 F.3d 973, 979 (9th Cir. 2007).

Mr. Webster contends that counsel was ineffective for failing to make an objection to the admission of the Western Union "To Send Money" forms -- including any information gathered from those forms -- and for his failure to object to the admission of the cellular phone entry of Richard Todd bearing Mr. Webster's telephone number. In making the determination of the merit of Mr. Webster's claims, this Court must apply the two-prong test found in *Strickland*, *supra*, to determine whether counsel's performance fell below and objective standard of reasonableness and, if so, whether Mr. Webster suffered harmful prejudice as a result of the deficient performance. *Osborn v. Belleque*, 385 Fed. Appx. 701 (9th Cir. 2010). However, any error that occurred -- even if prejudicial -- as a result of a sound trial strategy is virtually beyond being challenged by a petitioner in a Motion to Vacate. *Smith v. Mahoney*, 596 F.3d 1133, 1143 (9th Cir. 2010)(citing *Strickland*, 466 U.S. at 689)).

## i. THE "TO SEND MONEY" FORMS FROM WESTERN UNION ARE INADMISSIBLE HEARSAY

Mr. Webster contends that the "To Send Money" forms and any information gathered from those forms are inadmissible hearsay. The statements made on the

"To Send Money" forms are classic examples of hearsay -- they are out-of-court statements being offered to prove the truth of the matters asserted on the forms. See e.g. *United States v. Arteaga*, 117 F.3d 388 (9th Cir. 1996). At first-blush, the business record exception and the co-conspirator exception appear to allow the admission of these forms. However, upon closer examination, neither of the exceptions to the general rule would apply.

### Co-Conspirator Exception

Under Rule 801(d)(2)(E), *Fed. R. Evid.*, any statement made during and in furtherance of a conspiracy can be admitted against a co-conspirator. See all *United States v. Moran*, 482 F.3d 1101, 1108 (9th Cir. 2006) . However, the government must prove the existence of the conspiracy by a preponderance of the evidence, prior to admitting any statement under this exception. *United States v. Liera,* 585 F.3d 1237, 1245 (9th Cir. 2008). It is the quantum of proof necessary to establish the foundation for the admission that Mr. Webster contends precludes the application of this exception to the general rule, as the government cannot prove by a preponderance of the evidence -- without the statements of the co-conspirators -- that there was a conspiracy and Mr. Webster was involved in it.[2]

---

[2] It is important to understand that in order to admit hearsay information under the co-conspirator exception, the government must prove, by a preponderance of the

Within the Ninth Circuit, it is a well-settled principle that "the government cannot rely solely on the coconspirator statements themselves to establish the existence of a conspiracy or the defendant and the declarant's involvement in it, but must instead put forward "*independent evidence*" to establish this foundation." *United States v. Gonzalez-Valdez*, 321 Fed. Appx. 683, 684 (9th Cir. 2008)(citing *United States v. Castandeda*, 16 Fg.3d 1504, 1507 (9th Cir. 1994)(emphasis supplied)(punctuation omitted). Moreover, the "independent evidence" must be "fairly incriminating." That is to say that "[e]vidence of wholly innocuous conduct or statements by the defendant will rarely be sufficiently corroborative ... to constitute proof, by a preponderance of the evidence, that the defendant knew of and participated in the conspiracy." *Castaneda* at 1507. *Castaneda* was clear in its holding that a "hearsay statement of a co-conspirator ... does not constitute independent evidence." Id. at 1508.

---

evidence, that not only the delcarant is part of a conspiracy, but also that the person who the statement is being offered *against* is part of the same conspiracy. Rule 801(d)(2)(E), *Fed. R. Evid.*. This is important because while the government could strongly prove Richard Todd and Kelly Mayes' involvement in a conspiracy, without their testimony and the evidence that that government would have to lay this foundation for, there is no evidence that Mr. Webster was involved in this conspiracy.

When viewed against this backdrop, there is no evidence sufficient to admit the "To Send Money" forms from Western Union, as the only evidence -- besides the hearsay statements of a co-conspirator -- to tie Mr. Webster to the conspiracy is the Western Union forms themselves. Rule 801(d)(2)(E), *Fed. R. Evid.*, is clear itself that the hearsay statement sought to be admitted may be considered, but cannot supply the foundation for admitting the evidence under that rule. Since the only evidence to even accuse Mr. Webster of the conspiracy is the Western Union forms themselves, this evidence cannot be admitted under the co-conspirator exception to the hearsay rule. Likewise, since the phone entries cannot be admitted by themselves, as discussed below, permitting the phone record entries to "bootstrap" itself to the evidence to admit the Western Union "send-to" forms would be exactly the type of evidentiary issues that US Supreme Court warned of and forbid decades ago. See *Glasser v. United States*, 315 U.S. 60, 75 (1942).[3]

---

[3] While *Glasser* was somewhat overruled by *Bourjaily v. United States*, 483 U.S. 171 (1987), that overruling was short lived. When Congress amended the Federal Rules of Evidence following the ruling in *Bourjaily* it specifically stated that "[t]he contents of the statement shall be considered but are not alone sufficient to establish the ... existence of the conspiracy and the participation therein of the declarant *and* the party against whom the statement is offered." Rule 801(d)(2)(E), *Fed. R. Evid.*(emphasis added). Thus, while the court is permitted to consider the evidence, there must be evidence aliunde -- outside of the co-conspirators statements -- to establish the foundation to admit the evidence under this exception to the general Rule. Mr. Webster contends that since this is the only questionable evidence aliunde that can possibly link him to the conspiracy itself, there is not

Each of these pieces of evidence is not independently admissible. Like hearsay within hearsay, each step of the hearsay evidence must be admissible. The phone entries are not admissible by themselves; likewise the Western Union "To Send Money" forms are not admissible by themselves. Collectively, they do not somehow become admissible. "Otherwise hearsay would lift itself by its own boot straps to the level of competent evidence." *Glasser*, 315 U.S. at 75.

Moreover, evidence of this nature is not the "fairly incriminating" type of "independent evidence" required to admit such matters in the Ninth Circuit. The fact that Mr. Webster's phone number was found in an alleged co-conspirators telephone is "wholly innocuous," likewise, assuming *arguendo* that Mr. Webster received a Western Union from one of the alleged co-conspirators, that is also "wholly innocuous" behavior. There is not a single thing that is incriminating about either of those pieces of evidence, standing alone. It is only when the "hearsay statement['s] of a co-conspirator" is injected does the evidence take on the value that the government seeks to have attributed to it.

---

sufficient evidence to support the foundation necessary to admit the proffer evidence by the government.

11

Even with the trial testimony of the co-conspirators, the testimony is still hearsay. For any of them to testify that "I told the Western Union representative that my name was xxxxx" or "I wrote xxxxx as my name on the form," all of that information is hearsay, when offered to prove the matters asserted. Whether written or spoken, statements made outside of court, offered to prove the truth of those statements are hearsay. See Rule 801(a), *Fed. R. Evid.*(A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion.)

Since the "hearsay statements" of a co-conspirator does not establish the admissibility of evidence, this evidence could not be admitted under this exception. Admittedly, *if* the conspiracy is established by a preponderance of the evidence, then that testimony could be admitted. However, there is not sufficient evidence to establish that Mr. Webster was a member of the conspiracy without the evidence of the "To Send Money" forms and the cellular phone entries sufficient to support the threshold showing for admissibility of the evidence.

Thus, the Western Union "To Send Money" forms are not admissible under the co-conspirator exception to the general hearsay rule and counsel was ineffective for his failure to object to the admission of this evidence against Mr. Webster.

### *Business Record Exception*

Rule 803(6) of the *Fed. R. Evid*, provides that:

> "A memorandum, report, record, or data compilation, in any form of acts, events, conditions, opinions, or diagnoses, made at or near the by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of the information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

Id.

The key to the business records exception is that it is based on a presumption of accuracy. The very Rule itself excludes information falling under the purview of this exception when the "source of the information ... indicate lack of trustworthiness." Therefore, the policy reasons supporting the business records exception fails when "any of the participants is outside the pattern of regularity of activity." *United States v. Snyder*, 787 F.2d 1429, 1424 (10th Cir. 1986)(citing *Weinstein & M. Berger, Weinstein's Evidence*, at 803-186 (1985)). As the *Advisory Committee* to Rule 803(6) note: "If, however, the supplier of the information does not act in the regular course [of business], an essential link is broken; the assurance

of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail." Id.

The Ninth Circuit has already directly ruled that the admission of information on a "To Send Money" form do not fall within the confines of a business record exception, because, as the rule requires, the customer is the one supplying the information. *Arteaga*, 117 F.3d at 395. The Arteaga Court reasoned that the business record exception is premised upon reliability and unless the employee was responsible for verifying the information supplied by the customer, the information provided by the customer is not admissible into evidence. Id.

Moreover, the trial testimony demonstrates the lack of trustworthiness of the information supplied to the Western Union employee. Richard Todd directly testified that he "forged" Kelly Mayes name in allegedly sending money to Mr. Webster. *Tr. Trans. Vol 2, pg 466* ("Q. Now you stated that the $300 that you sent - - you sent that, not Kelly; is that correct? A. Yes. I sent that. I used Kelly's name.) Such an act simply reaffirms the sound policy considerations in excluding evidence of this type.

## ii. THE CELLULAR PHONE ENTRIES ARE INADMISSIBLE HEARSAY

Like the Western Union "To Send Money" forms, the admissible of the evidence from the cellular phonebook also violated the hearsay rule and counsel

was ineffective for failing to object to the admission of that evidence. Mr. Webster would submit that the entry into Todd's phone that bared Mr. Webster's number is a statement offered to prove the truth of what is stated: that Mr. Webster's number was in Mr. Todd's phone.

The identical arguments discussed above apply with equal force to this argument, as well. As noted earlier, a "statement" is either an oral or written assertion. Rule 801(a), *Fed. R. Evid.* There is no principled way to distinguish between a "statement" written on a piece of paper with a pen and a statement entered into a keypad to be stored in a phone. Either way, an individual is making a statement that asserts something. This situation could be likened to an e-mail and there is no question that an e-mail is considered hearsay for the purposes of this rule. *United States v. Dupre*, 462 F.3d 131 (2nd Cir. 2006)(E-mail hearsay if offered for the truth of the matter stated).

Even more, this situation is absolutely no different than an individual writing their information on a "To Send Money" form. The information is intended to assert something and the government is offered it for the truth of the matter asserted.

Without needlessly repeating the legal arguments that have been made above, which are adopted by reference, Mr. Webster would submit that the entries into Todd's phone are not admissible for the purposes the government admitted

them. Even more, since this type of evidence is of the *most* innocuous nature, it cannot form the basis to support the necessary foundation to prove that a conspiracy existed by a preponderance of the evidence, in order to support the hearsay information itself.

As such, Mr. Webster would submit that counsel was ineffective for failing to object to the admission of this evidence.

### iii. COUNSEL'S FAILURE TO OBJECT TO THE ADMISSION OF THIS EVIDENCE PREJUDICED MR. WEBSTER

The second prong of the *Strickland* test is prejudice. Even if the Court were to find that counsel was ineffective for failing to object to the admission of the evidence, Mr. Webster must also demonstrate that he was prejudiced and without a concomitant showing of prejudice and deficient performance, his ineffective assistance counsel claims must fail. *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1986)].(Both prongs must be shown, one without the other does not afford a petitioner relief).

Mr. Webster submits that counsel's failure to object to this evidence not only permitted harmful evidence to be admitted against him -- actually the *only* evidence available, absent the testimony of the co-conspirators -- but because of

counsel's failure to object, Mr. Webster was deprived of review in the appellate court.

## B. COUNSEL WAS INEFFECTIVE ON APPEAL FOR FAILING INFORM THE COURT OF APPEALS THAT THE PROPOSED METHAMPHETAMINE EXHIBIT WAS ACTUALLY SHOWN TO THE JURY

The Ninth Circuit has long held that the *Strickland* standard applies on the appellate level. *Miller v. Keeney*, 822 F.2d 1428 (9th Cir. 1988). Thus, in order to succeed, Mr. Webster must demonstrate that counsel's failure to inform the Court of Appeals that the exhibit was actually published to the jury prejudiced his defense. Mr. Webster submits that the opinion of the Ninth Circuit demonstrates the difference this information would have made.

While the exhibit was ultimately not entered into evidence, Todd was permitted to testify to the different qualities of the drugs, while the drugs were actually being shown to the jury. *Tr. Trans. Vol. 2* pg 416. When the government moved to admit this evidence, it announced to the Court that:

> "Your Honor, understanding that it's not methamphetamine that is directly attributable to this defendant, for demonstrative purposes, for illustrative purposes, we move 7."

*Tr. Trans. Vol 2.* pg 416-417;

Counsel for Mr. Webster then objected, because the drugs were not linked in any way to Mr. Webster and the district court properly excluded the drugs from

17

evidence. Id at 417. However, at that point, the drugs had already been shown to the jury and the testimony had already been admitted. The Court of Appeals found that the testimony was fine, since "[t]he proposed exhibit was never shown to the jury and was excluded from evidence." However, the exhibit *was*, in fact, shown to the jury. The government obtained the result that they wanted -- flash a bag full of drugs in from the jury during a drug trial and talk about the drugs in relation to the defendant. Since the government had not a single speck of physical drugs to attribute to Mr. Webster, this is of particular significance.

Even the transcripts demonstrate that Todd was looking at the packages of the drugs in front of the jury:

> **"Q. There are two packets in this proposed exhibit.**
> **One appears to be powder-like, and the other one, can**
> **you see it through the package?**
> A. Yes.
> **Q. The one of the left here appears to be more -- looks**
> **like rice, almost.**
> A. Yeah. That's the more pure.
> **Q. And that is generally what it look like, the type of**
> **methamphetamine that you were receiving from Mr.**
> **Webster?**
> A. Yes."

*Tr. Trans. Vol. 2*, pg 416.

This exhibit was being shown to the jury as Todd testified; the exhibit was in his hands and could be easily viewed by the jury. Mr. Webster submits that counsel's failure to inform the Court of Appeals concerning this -- given their

reliance upon the misplaced belief that it was not shown to the jury -- was ineffective assistance of counsel and Mr. Webster submits that he is entitled to relief in this matter, in the form of a new trial, without the objectionable evidence being shown to the jury.

## C. THE CUMULATIVE ERRORS OF COUNSEL VIOLATED MR. WEBSTER'S DUE PROCESS RIGHTS TO A FAIR TRIAL

Mr. Webster submits that each error in this case is sufficient to warrant a new trial, however, even if this Court deemed each error to be insufficient individually, the cumulative effect of the errors warrant a new trial in this matter.

There are occasions where no single error, standing alone, is sufficient to warrant reversal of a conviction. But, the cumulative effective of multiple errors prejudice a defendant's right to a fair trial. *United States v. Green*, 648 F.2d 587 (9th Cir. 1981). Since there are a number of issues involved in this case a "balkanized, issue-by-issue harmless error review" is inadequate to determine the overall effect of the admission this hearsay evidence had on the jury. *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1995)(citing *United States v. Wallace*, 848 F.2d 1464, 1476 (9th Cir. 1988)).

The question that this Court must answer is whether the "aggregated errors so infected the trial with unfairness as to make the resulting conviction a denial of

19

due process." *Jackson v. Brown*, 513 F.3d 1057, 1085 (9th Cir. 2006)(citing *Parle v. Runnels*, 387 F.3d 1030, 1045 (9th Cir. 2004)). In cases where the government's proof is weak, a defendant is more likely to be prejudice by the effect of cumulative errors. *Frederick*, *supra*, at 1381(citations omitted).

The proof in the instant case was rather weak. There were no drugs, no surveillance, no wire-taps, no recorded telephone calls, no controlled buys. The incriminating evidence against Mr. Webster consisted entirely of testimony from criminals. There was not a single shred of direct physical evidence linking Mr. Webster to the crime. The only circumstantial evidence the government has is the very hearsay evidence Mr. Webster contends is inadmissible. Without the Western Union "To Send Money" forms and the cellular phone entry, there was absolutely nothing to show that these individual even *knew* Mr. Webster, let alone allegedly sold drugs with him.

Mr. Webster would submit that the even if the admission of the "To Send Money" forms and the cellular phone entry does not rise to the level of harmful error separately, combined, the errors are of such prejudicial effect to render the resulting trial unfair. Had counsel challenged this evidence successfully -- there were certainly grounds to do so -- the government would not have had a single piece of evidence that actually links Mr. Webster with these individuals. Therefore,

the prejudicial effect on the cumulative nature of this evidence warrants reversal of the conviction against Mr. Webster.

This evidence has a "spill over" effect on all of the counts of conviction. Without the "To Send Money" forms, Mr. Webster could not have been convicted of the money laundering count of conspiracy to launder money. Further, without the cellular phone entries and the "To Send Money" forms, the government could not have linked Mr. Webster to a conspiracy to distribute controlled substances, which would have also affected the substantive count of possession. Since Mr. Webster was not actually caught with any type of controlled substance, the prejudice effect this evidence had on the overall trial cannot be fully measured. However, it is safe to say that these two pieces of evidence substantially affected the jury's verdict on <u>all</u> counts of the indictment, not just some of them.

Given the severity of the sentence imposed upon Mr. Webster as a result of these convictions, he would submit that he is entitled to a new trial, absent this inadmissible evidence.

## IV. CONCLUSION

Mr. Webster would submit that he received ineffective assistance of counsel in this case, in violation of the Sixth Amendment to the United States Constitution,

21

when counsel failed to properly object to the admission of the "To Send Money" Western Union forms and the cellular phone entry containing his telephone number in Richard Todd's cellular telephone. This evidence was the only evidence that actually linked Mr. Webster to the crime that the government alleged he was involved with and provided the sole evidence to support his money laundering conviction. The "spill over" effect of these two pieces of evidence infected the entire proceedings and the jury's verdict on all counts.

Moreover, Mr. Webster would submit that counsel's failure to properly argue the issue concerning the display of the inadmissible drug evidence on appeal affected the outcome of the appeal, more so in light of the fact that the Court of Appeals based its ruling on the misunderstanding concerning whether the drugs were displayed to the jury. When the government displayed that evidence, it did what it intend to do all along: put a controlled substance in front of the jury to look at, since they did not obtain a single speck of controlled substance from Mr. Webster.

Given the totality of these errors, Mr. Webster would contend that he is entitled to a new trial in this matter and to having the judgment of conviction against him vacated.

RESPECTFULLY SUBMITTED,

LAMAR WEBSTER
# 90396111
*Petitioner*
USP Tucson
P.O. BOX 24550
TUCSON, ARIZONA 85734

**LAMAR WEBSTER**