FILED
JUN 04 2012
PATRICK E. DUFFY  CLERK
BY_____
   Deputy Clerk
U.S. DISTRICT COURT
BILLINGS DIVISION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 07-128-BLG-RFC |
| | CV 12-036-BLG-RFC |
| Plaintiff/Respondent, | |
| vs. | ORDER DENYING § 2255 MOTION |
| | AND DENYING CERTIFICATE |
| LAMAR WEBSTER, | OF APPEALABILITY |
| Defendant/Movant. | |

On March 15, 2012, Defendant/Movant Lamar Webster ("Webster"), a federal prisoner proceeding pro se, filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Webster also filed a brief in support.

**I. Preliminary Screening**

The motion is subject to preliminary review to determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.

A movant "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court,* 98 F.3d

ORDER / PAGE 1

1102, 1109 (9th Cir. 1996) ("*Nicolaus*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases); *see also Hill v. United States*, 368 U.S. 424, 427 (1962) (§ 2255 is "exactly commensurate" with § 2254). "[I]t is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases; *see also* 28 U.S.C. § 2243.

## II. Background

On September 24, 2007, a grand jury indicted Webster on one count of conspiracy to possess with intent to distribute more than 500 grams of a substance containing methamphetamine, a violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count 1); one count of possession with intent to distribute more than 500 grams of a substance containing methamphetamine, a violation of 21 U.S.C. § 841(a)(1) (Count 2); one count of conspiracy to launder money, a violation of 18 U.S.C. § 1956(h) (Count 3); and one count of money laundering consisting of 24 separate acts, a violation of 18 U.S.C. § 1956(a)(1)(A)(i) (Count 4). Indictment (doc. 1) at 1-6. On October 24, 2007, the United States filed an Information under 21 U.S.C. § 851, alleging that Webster had twice been previously convicted of felony drug trafficking offenses. Information (doc. 3) at 1-2. Filing of the Information subjected Webster to a mandatory sentence of life in prison if convicted on Counts 1 or 2. 21 U.S.C. §

841(b)(1)(A). Webster was arrested in the Northern District of California and appeared in this Court on December 21, 2007. Minutes (doc. 7).

Trial commenced on December 1, 2008. On December 4, 2008, the jury convicted Webster on each count. Verdict (doc. 81) at 1-3. On April 17, 2009, Webster was sentenced to the statutory mandatory minimum life sentence on Counts 1 and 2 and to 240 months on Counts 3 and 4, concurrently. Minutes (doc. 93); Judgment (doc. 96) at 2.

Webster appealed. On September 30, 2010, the panel affirmed his conviction. *United States v. Webster*, 623 F.3d 901, 908 (9th Cir. 2010). On April 4, 2011, the United States Supreme Court denied review on writ of certiorari. *Webster v. United States*, __ U.S. __, 131 S. Ct. 1836 (2011).

Webster timely filed his § 2255 motion on March 15, 2012. 28 U.S.C. § 2255(f)(1).

### III. Webster's Claims

Webster contends that trial counsel Bryan Norcross violated his Sixth Amendment right to the effective assistance of counsel in connection with the admission of three items of evidence against him: Western Union "To Send Money" forms, an entry in witness Richard Todd's cell phone, and drugs that were sold to an undercover agent after Webster had withdrawn from the conspiracy in 2005. He also

alleges that he was prejudiced by the cumulative effect of counsel's deficient performance. Mot. § 2255 (doc. 124) at 5.

## IV. Analysis

*Strickland v. Washington*, 466 U.S. 668 (1984), governs claims alleging ineffective assistance of counsel. First, Webster must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88. Second, he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "[T]here is no reason for a court deciding an ineffective assistance claim . . . even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

### A. Cell Phone Number

The link between a cell phone number and the name and address of the person responsible for paying the bill is a business record. Fed. R. Evid. 803(6). Agent Jenkins testified that a cell phone taken from Richard Todd upon his arrest contained a particular phone number, described as belonging to "L." Through other admissible business records, Agent Jenkins demonstrated that the phone number belonged to Nicole Ames and that Ames lived at the same address as Lamar Webster. Trial Tr.

at 187:22-194:10, 203:10-206:17. There is no inadmissible hearsay here. Although Agent Jenkins later testified that she believed Lamar Webster used the phone number described in Todd's phone as belonging to "L," *id.* at 218:5-7; *see* Br. (doc. 125) at 15, she stated that belief as her own inference from the records. It was not information contained within the evidence. This claim is denied.

**B. Western Union Forms**

On direct appeal, the court noted that Western Union's "To Send Money" forms and receipt forms themselves, Exhibits 9 through 26, were admissible non-hearsay under Fed. R. Evid. 803(6)(B). It further noted that Webster's name on one receipt form, Trial Tr. at 303:10-307:16, was admissible non-hearsay under Fed. R. Evid. 801(d)(2)(E) and, at any rate, admission of the name was harmless in light of the corroborating evidence. *See Webster*, 623 F.3d at 904-05. Because the appellate court found both that the documents were admissible and that any possible error was harmless, Webster can show neither that counsel performed deficiently by filing to object nor that Webster was prejudiced as a result. Neither prong of the *Strickland* test is met.

Webster asserts that the appellate court's reasoning was mistaken, because the non-testimonial evidence in the case was not sufficient evidence to establish his participation in a conspiracy with Mayes and Richard Todd. Br. at 8-12. He also

contends that the business records exception to hearsay did not apply to identification of the senders and receivers listed on the Western Union forms.

But Webster can make these arguments only by ignoring almost all of the evidence in the case. Chris Dayley, for instance, identified Webster in a photo lineup the week before trial as someone he met years earlier in a room at the Billings Hotel, along with Garry Ireland and Richard Todd, to discuss selling methamphetamine. Trial Tr. at 246:8-248:24, 264:1-265:14. He knew Webster as "L." *Id.* at 263:20-25. Richard Todd testified that Webster supplied him with methamphetamine, *id.* at 328:6-329:10, 336:8-337:10, and he called Webster at the cell phone number described as belonging to "L" "regarding the drugs" they dealt together, *id.* at 419:2-14. Brandon LeClair testified that he, Todd, and "L," whom he identified at trial as Webster, concealed six pounds of methamphetamine in a tire to transport it from California to Montana. *Id.* at 485:19-488:21. LeClair said Todd told him that "L" was his partner, *id.* at 491:16-492:11, and LeClair saw "L" in Billings twice, *id.* at 494:9-496:5. Garry Ireland testified that he took 2.5 pounds of methamphetamine from "L's" hands through the passenger window of Todd's Chevy truck, *id.* at 515:2-516:6, and that "L" went with Ireland and Todd from California to Montana to sell it, *id.* at 518:16-520:15. Sam Ireland testified that he saw Webster take a pound of methamphetamine out of a cupboard in Webster's house and hand it to Todd. *Id.* at

548:5-18. Kelly Mayes testified that Todd instructed her to give $16,000 in cash to Webster on one occasion, *id.* at 622:2-19, she understood that Webster was "the biggest of the guys" Todd dealt with, *id.* at 639:5-6, and she heard Todd talking to Webster on the phone about money and drugs, *id.* at 666:2-12.

These witnesses were not testifying about "wholly innocuous conduct or statements by the defendant." *United States v. Castaneda*, 16 F.3d 1504, 1507 (9th Cir. 1994), *cited in* Br. at 9. Nor was Webster's guilt established only by several co-conspirators testifying that they all heard other people refer to Webster as a member of the conspiracy. These witnesses saw Webster do things that were consistent with participation in the conspiracy and inconsistent with innocence, and that makes this case distinguishable from *Glasser v. United States*, 315 U.S. 60, 73-74 & n.5 (1942), *cited in* Br. at 10-11 & n.3. It was fairly left to the jury to decide whether their testimony was credible and whether the persons identified on the Western Union forms as sending or receiving money were truly involved in the transactions. Webster's claim regarding the Western Union forms is denied.

### C. The Rejected Methamphetamine Exhibit

Government's Proposed Exhibit 7 was three ounces of methamphetamine. Some jurors could probably see it, but not very well. A three-ounce quantity of methamphetamine is about the size of a tennis ball, and this ball was separated into

ORDER / PAGE 7

different bags. Trial Tr. at 176:7-12, 179:6-8, 180:16-181:21. No juror got a good look at it because it was not admitted for any purpose, as evidence or as illustration, so it was not displayed on the jurors' individual screens. *E.g.*, Trial Tr. at 190:19-23.

This limited display cannot fairly be characterized as "flash[ing] a bag full of drugs in [front of] the jury." Br. at 18. Nor was the incident "of particular significance." *Id.* The jurors were emphatically told that the drugs were not Webster's:

> Seykora: Your Honor, understanding that it's not methamphetamine that is directly attributable to this defendant, for demonstrative purposes, for illustrative purposes, we move 7.
>
> Norcross: I absolutely object, Your Honor. If it's illustrative, it doesn't go to the jury. The jury shouldn't have it anyway. These drugs did not come from my client, and they should not be admitted into evidence.
>
> The Court: I will sustain the objection.

Trial Tr. at 416:24-417:7.

And Todd's testimony describing the proposed exhibit was unremarkable. Asked whether the methamphetamine in Proposed Exhibit 7 was "representative of the type of methamphetamine" Todd claimed he "received from Lamar Webster in 2003 and 2004," Todd replied, "Yes. I mean, crystal meth, it's never exactly the same. But, yeah, it was crystal meth, like all of the other crystal meth." He agreed

it "looks like rice, almost." Trial Tr. at 415:22-416:23. ("[R]ock salt," another witness said. *Id.* at 244:22.) As the Court of Appeals observed, "[t]he line of questioning pertaining to the exhibit was directed at educating the jury about the various forms of methamphetamine and not at making a connection between the drugs . . . and Webster." *Webster*, 623 F.3d at 904.

The question at trial was whether Todd and the other witnesses were telling the truth about Webster. Even if the jurors had been shown Proposed Exhibit 7 – and they were not – they would only have seen what methamphetamine looks like. Further, it is clear that the purpose of offering the exhibit was not to connect Webster to drugs. The proposed exhibit made no difference at trial, and there is no reasonable probability that the Court of Appeals would have found reversible error if it had been advised that the jurors might have been able to see the proposed exhibit but not in detail. This claim is denied.

### D. Cumulative Error

Because Webster has not identified any respect in which counsel's performance was deficient, there is no legal basis for considering cumulative prejudice. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006).

### V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it

enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The evidence against Webster was not so weak as he claims. At least three witnesses, LeClair and the two Ireland brothers, testified to seeing him handle methamphetamine with other co-conspirators on more than one occasion. None of this testimony depended on any of the evidentiary items whose admission Webster now seeks to challenge under the rubric of ineffective assistance of counsel. *See also Webster*, 623 F.3d at 907-08 (reviewing sufficiency of the evidence). Further, counsel could not reasonably have avoided admission of the name and phone number in co-conspirator Todd's cell phone or of the Western Union forms. The proposed methamphetamine exhibit, which counsel successfully kept out of evidence, was innocuous in itself. There is no reasonable probability that the Court of Appeals would have remanded for a new trial if it had known that some jurors might have

been able to see the innocuous exhibit at a distance. *Webster*, 623 F.3d at 904. And, because there was no deficient performance, there was no cumulative prejudice.

The trial errors Webster alleges were not errors because the evidence he claims was inadmissible was in fact admissible. Counsel's performance was neither deficient nor prejudicial to Webster. There is no reason to encourage further proceedings on these claims. A COA is not warranted.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Webster's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (doc. 124) is DENIED;

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Webster files a Notice of Appeal;

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 12-36-BLG-RFC are terminated and shall close the civil file by entering judgment in favor of the United States and against Webster.

DATED this ___ day of June, 2012.

Richard F. Cebull
United States District Court