IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff and Respondent,<br><br>vs.<br><br>LAMAR WEBSTER,<br><br>               Defendant and Movant. | Cause No. CR 07-128-BLG-SPW<br><br><br>ORDER |

This matter comes before the Court on Defendant and Movant Lamar Webster's amended § 2255 motion. (Doc. 169.) Following its preliminary review of the parties' submissions, the Court ordered Webster to show cause why his motion should not be dismissed as time-barred. (Doc. 243.) The parties briefed the issue, (Docs. 244 and 246), and the Court now concludes Webster's motion must be dismissed as untimely.

## I. Background

Webster's motion was filed on September 26, 2017. (Doc. 143.) In it, Webster recited the procedural history of his case. He described how he received a letter on February 23, 2016 from Michael Cotter, the U.S. Attorney for the District of Montana, explaining how the prosecutor in Webster's case had been found to have withheld *Brady/Giglio* material in other cases. (Doc. 244-1 at 10 (Decl. of L.

1

Webster); letter available at 137-1 at 2.) This letter did not make any claims about

former A.U.S.A. James Seykora's actions in Webster's case specifically but did

describe the gist of the identified problem: in other cases, Seykora had elicited

from witnesses information that "left a false impression with the jury" that the

witnesses did not have immunity and may not have disclosed potential witness

impeachment material. (Doc. 143-1.) The letter expressed reluctance to do much

work evaluating closed files without a degree of specificity as to the issues of

concern from Webster. *Id.* at 3.

Webster sought additional information from the U.S. Attorney's Office

("USAO") on March 31, 2016. (Doc. 244 at 5.) He received no response until his

mother contacted A.U.S.A. Carl Rostad, who responded to her by email on May

20, 2016. (Doc. 143 at 8.) According to Webster, Rostad's response "basically

stated that the government would do no more unless Webster filed a motion

regarding alleged misconduct by the former AUSA." (Doc. 143 at 8.) Rostad states

that no review of closed files will take place until Webster "makes a credible claim

information that could be used for impeachment of a witness was withheld, that the

failure to disclose affected the outcome, and that the prisoner has not exhausted his

post-conviction remedies."[1] *Id.* The USAO expected Webster to review the files of his attorney to see if there was reason to believe something had NOT been produced, not request that the USAO do that work itself.

During this time, Webster's mother also contacted his trial counsel. (Doc. 244 at 5.) After hearing back from the USAO that it would not review its files, Webster again contacted his trial counsel and asked him to review his file. On August 4, 2016, counsel responded to say that he had reviewed his files and "it did not appear that the prosecutor failed to disclose witness statements, plea agreements for witnesses, or other promises made by the government to witnesses in exchange for their testimony…" (Doc. 244 at 6.)

Webster filed his motion approximately one year and two months later. (Doc. 143.) The Court dismissed it as a second or successive § 2255 motion. (Doc. 139.) Webster appealed, and the Ninth Circuit Court of Appeals directed the Clerk of this Court to file the motion, with a filing date of September 26, 2017. (Doc. 143-2.)

## II. Analysis

The question posed by the Court in its prior Order was whether Webster's

---

[1] This language loosely reflects the elements of a first 28 U.S.C. § 2255 *Brady/Giglio* claim.

motion was timely filed, given that he had been informed by the U.S. Attorney's office of potential prosecutorial misconduct in February, 2016. (Doc. 243.) A one-year limitations period applies to motions under 28 U.S.C. § 2255. Time begins to run on the latest of four "trigger" dates. *See* 28 U.S.C. § 2255(f); *Lee v. Lampert*, 653 F.3d 929, 933 (9th Cir. 2011) (en banc). These are:

   (1)    the date on which the judgment of conviction becomes final;

   (2)    the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

   (3)    the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

   (4)    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

A motion that is untimely under the statute may nonetheless be heard if the movant can show that he is entitled to equitable tolling or that he is actually innocent. *See, e.g.*, *Holland v. Florida*, 560 U.S. 631 (2010); *McQuiggin v. Perkins*, 569 U.S. 383 (2013).

Webster relies on § 2255(f)(2) and (4) to argue that his motion is timely. (Doc. 244 at 2.)

### A. § 2255(f)(4)

Section 28 U.S.C. § 2255(f)(4) provides a one-year period to file, which "shall run from the latest of: (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." "Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance." *Hasan v. Galaza*, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001) (*quoting Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)). Webster frames this as when he "himself could have learned of the new evidence, exercising reasonable care, and taking into account the fact of his incarceration and lack of counsel." (Doc. 244 at 4.) Webster asserts that he could not have found the necessary facts, with diligence, by February 2016. (Doc. 244 at 4 – 5.)

At first blush, Webster's argument makes some sense, since to have iron-clad proof that there was undisclosed *Giglio* information in Seykora's file, he would need to look in Seykora's file. However, iron-clad is not the standard of information he needed. Generally, prosecutors benefit from a "presumption, well established by tradition and experience, that [they] have fully discharged their

5

official duties." *Strickler v. Greene*, 527 U.S. 263, 286 (1999) (internal quotation marks and citation omitted). In any case, a prosecutor *might* fail to disclose material exculpatory or impeaching information. The bare possibility that a prosecutor failed to disclose something does not support a claim under § 2255. Specific facts must indicate the defendant has reason to believe the "well established" presumption does not apply.

For defendants whose convictions or sentences rested at least in part on cooperating witnesses' trial testimony, Seykora's participation in the case "nudge[s] their claims across the line from conceivable to plausible," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and "allows the court to draw the reasonable inference that the defendant"—here, the United States—"is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Seykora's previous omissions are not speculative but proven. His record is a "substantive fact[] that will enable the court to see a real possibility of constitutional error." *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970), *cited in* Rule 4, § 2254 Rules, advisory committee note (1976); *see also* Rule 4, § 2255 Rules, advisory committee note (1976) (referring to note to § 2254 Rule 4). Webster had sufficient factual support for his motion when he learned that there had been problems in prior prosecutions, in light of what he already knew in 2008 from his trial, that a

6

number of the witnesses against him had agreed to testify with some possibility of

a benefit in their sentence.

The motion Webster ultimately filed on September 26, 2017, after

authorization by the Court of Appeals, bears this view out. Webster's motion relied

on nothing more than the U.S. Attorney's office's letter to him of February 23,

2016, what is available in the transcript of his trial, and some factual statements

that appear drawn from public record, or other court documents. (Doc. 143 and

143-1.) This motion is the one the Ninth Circuit Court of Appeals reviewed and

determined made a prima facie showing sufficient to merit filing in the district

court. (Doc. 143-2.) The amended motion filed by his appointed counsel two years

later, on July 17, 2019, included no further documents, though it elaborates

conjecture as to what promises may have been made to testifying witnesses, or

what reductions in sentence had already been granted to these witnesses.

The Court concludes that Webster had the facts that he needed to file his

motion when he received the letter from the USAO in February, 2016.  The letter is

dated the 23rd and Webster's asserts in his declaration that he received it on the

23rd. (Doc. 244-1 at 10.) However, the record does not show the exact date it was

received, so the Court will grant him some wiggle room. He should have filed his

motion by March 1, 2017. By that date, "the facts supporting the claim or claims

7

presented could have been discovered through the exercise of due diligence."
Section 28 U.S.C. § 2255(f)(4).

To accept Webster's argument would mean that the statute of limitations
never began to run, because he never was going to get the USAO to search its files
further without cause. At some point, the statute of limitations must do what it is
meant to do, i.e., promote judicial efficiency and conservation of judicial
resources, safeguard the accuracy of judgments by requiring resolution of
constitutional questions while the record is fresh, and lend finality judgments
within a reasonable time. *Day v. McDonough*, 547 U.S. 198, 205–06 (2006). If
Webster's position is extended *ad absurdum*, he was entitled to wait as long as he
liked to file his motion, because he never would have had more information than
he did when he was told by the USAO that it would not provide information unless
a motion was filed.

As Webster himself points out, the filing of the motions led to the discovery
he sought. (Doc. 244 at 8 – 9.) Had he filed in a timely manner, the Court could
have then proceeded to the merits of the case. Webster fails to justify why he did
not.

**B. § 2255(f)(2)**

Webster also relies on § 2255(f)(2) as a ground for his motion, when he states that he was

> "prevented from filing a §2255 motion by the extraordinary conduct of the government. First, the government violated *Brady* and *Giglio* by hiding discoverable material. A thorough search of its records (i.e., the investigation the government should have conducted prior to Lamar's trial) would have notified Lamar that his constitutional rights had been violated. Rather than searching its own files, the government waited until Lamar filed a motion based on the only documentation Lamar had available to him at the time."

(Doc. 244 at 10.) (Webster makes this argument in the context of his position that he is entitled to equitable tolling, but since he cited § 2254(f)(2) as a ground earlier, the Court considers it in that context as well.) Webster's argument undermines his position. It is true that Webster's motion resulted in the disclosure of the information he sought. But there is no explanation for why he did not file that motion earlier, since he was aware as early as March of 2016 that the government expected him to do so. The USAO did not prevent him from filing his motion on time.

## C. Equitable Tolling

Webster also contends that he is entitled to equitable tolling for approximately sixty days during which he was being transferred between prisons and did not have access to his legal papers. (Doc. 244 at 9; 244-1 at 12.)

9

To obtain equitable tolling, a movant must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Smith v. Davis*, 953 F.3d 582, 588 (9th Cir. 2020) (en banc) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). A movant must be reasonably diligent not only while the extraordinary circumstance prevents him from filing "but before and after as well, up to the time of filing his claim in federal court." *Id*. at 599. "[O]nly when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing" does equitable tolling apply. *Id*. at 600. "This is a very high bar, and is reserved for rare cases." *Yow Ming Yeh v. Martel*, 751 F.3d 1075, 1077 (9th Cir. 2014).

The prisoner bears the burden of showing that equitable tolling is appropriate. *Miranda v. Castro,* 292 F.3d 1063, 1065 (9th Cir.2002). A prisoner's "proceeding *pro se* is not a 'rare and exceptional' circumstance because it is typical of those bringing a [habeas petition]." *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000). *See also Rasberry v. Garcia,* 448 F.3d 1150, 1154 (9th Cir. 2006) ("a *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling"). Depending on the circumstances, a period of delay related to transfers and lack of access to one's legal materials may

10

give rise to equitable tolling. *Allen v. Lewis,* 255 F.3d 798, 801 (9th Cir.2001) (*per curiam*), *rev'd on other grounds,* 295 F.3d 1046 (9th Cir.2002) (*en banc*) (prisoner's 27–day lack of access to case materials during a prison transfer did not warrant equitable tolling).

After he received the February 2016 letter, Webster initially proceeded with diligence. He wrote back to the USAO with multiple requests for documents, apparently expecting the process to go differently than it did. After he was told that the USAO would not do the search for him, he understood the lay of the land. He sought information from his attorney. By Webster's own description, by August he had come to the end of the road. "As of August 4, 2016, Lamar had exhausted the options available to an unrepresented federal prisoner with no legal training or access to the PACER system. He requested information from the U.S. Attorney, which was ignored and denied. His trial counsel reviewed his archived trial file, as suggested by the U.S. Attorney, without success. Lamar's due diligence did not uncover any facts supporting a claim because the facts were in the sole possession of the U.S. Attorney's offices." (Doc. 244 at 7.) Webster shows no diligence for over a year after this point. The basis for the motion was available to him in February, 2016, and any information that may have changed or been added to his motion by later discovery was not necessary for him to file it.

11

Second, transfers were not an extraordinary obstacle to Webster filing his motion, especially since he knew he had no other way to proceed four months before his transfers began. But even if the Court granted Webster the two months he was in transit, his motion was still filed several months too late. Webster is not entitled to equitable tolling.

## D. Actual Innocence

Webster has not asserted that his untimeliness should be excused for purposes of the actual innocence gateway. *McQuiggin v. Perkins*, 569 U.S. 383 (2013).

## III.  Motion for a Hearing

On July 27, 2023, Webster moved for an evidentiary hearing, in part, to demonstrate his diligence in pursuing his motion. (Doc. 247.) Because the Court concludes that the record is sufficiently complete between the parties' briefs and the attachments to them, including Webster's Declaration, the motion will be denied.

## IV.  Conclusion

§ 2244(b)(4) instructs district courts to dismiss any claim in a second or successive motion "unless the applicant shows that the claim satisfies the requirements of this section," even if the court of appeals previously certified that

the motion made a prima facie showing. *Id.* § 2244(b)(4). *Jones v. United States*, 36 F.4th 974, 981 (9th Cir. 2022). In this matter, even though the Court of Appeals found that Webster made a prima facie case for his second motion, the motion is untimely and will be dismissed.

Accordingly, the Court enters the following:

## ORDER

1.     Webster's amended motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 169) is DENIED.

2. Webster's motion for a hearing is DENIED. (Doc. 247.)

3. A certificate of appealability is DENIED.  The Clerk of Court shall immediately process the appeal if Webster files a Notice of Appeal.

4. The Clerk of Court shall ensure that all pending motions in this case and in CV-07-128-BLG-SPW are terminated and shall close the civil file by entering judgment in favor of the United States and against Webster.

DATED this _15th_ day of August, 2023.

Susan P. Watters
United States District Court

13